

**SO ORDERED.**

**SIGNED this 08 day of September, 2010.**

_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

PUBLISHED

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN ALAN AUERNHEIMER, | ) | Case No. 08-13170 |
| JANET MAE AUERNHEIMER, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM OPINION

This case considers what the "effective date" of a modified plan is for purposes of 11 U.S.C. § 1329(a) and (b).[1] The debtors and the Trustee stipulate that items of their non-exempt, unencumbered personal property are worth less than the amounts reflected in the schedules and the original confirmed plan. Some of the assets are now worthless. The debtors seek to modify their

___

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S.C., as amended by BAPCPA (The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005).

-1-

confirmed plan, decreasing the amount they are required to pay the unsecured creditors.[2] The Trustee objects and contends that the value of the debtors' non-exempt assets was determined at confirmation of the first plan and that the "effective date" is, and always remains the effective date of the confirmed plan, not the modified plan. This matter was submitted to the Court on stipulated facts and briefs.[3]

Jurisdiction

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(L) over which this Court has subject matter jurisdiction.[4]

Findings of Fact

Debtors filed their chapter 13 petition, statement of financial affairs and schedules on December 5, 2008. On Schedule B, debtors listed several items of non-exempt, unencumbered personal property, including a small amount of funds in four checking accounts, three separate "receivables" valued at $13,000, a camera and guns, three older model vehicles valued at $800 and a 1964 aluminum U-Hull boat without motor. The total value of the debtors' personal property was shown as $14,907.04, but the debtors now assert that the present value of some of the assets is less than what is shown on Schedule B.

In debtors' Chapter 13 plan, First Amended Chapter 13 Plan and Second Amended Chapter 13 Plan, debtors calculated the estate's liquidation value at $14,932.40. The Court confirmed the Second Amended Plan on April 8, 2009. The Trustee projects that $15,960.90 would be distributed

---

[2] Dkt. 55.

[3] Dkt. 64, 65 and 66. Debtors appeared by their attorney Michael J. Studtmann. The chapter 13 trustee Laurie B. Williams appeared by her attorney Christopher Micale.

[4] 28 U.S.C. § 1334(b).

to general unsecured creditors under the confirmed Second Amended Plan.

On January 13, 2010, the debtors filed the current post-confirmation motion to modify the plan.[5] Debtors seek to cure a post-petition mortgage arrearage through the plan, and pertinent to the issue before the Court, seek to "reestablish" the liquidation value of the estate based upon a decline in value in the personal property and the receivables being uncollectible. The Trustee projects that under the proposed post-confirmation amendment, debtors would pay general unsecured creditors $3,130.85 from plan payments and an unknown amount from liquidation of non-exempt assets. The Trustee objects to the post-confirmation amendment under § 1325(a)(4), contending that the plan does not pay the liquidation value of the property.[6]

The three receivables in the amount of $13,000 are for all practical purposes uncollectible and worthless. The McCartney and Graham receivables were contracted in 2005 and the Taylor receivable was contracted in late 2007 and early 2008. The Taylor receivable was based upon an undocumented oral agreement whereby debtors loaned Taylor $1,000. Taylor has not repaid this loan and now disputes the debt, contending that he worked it off. The McCartney receivable was based upon an oral agreement whereby debtors loaned McCartney $7,000. This debt was not repaid and was discharged in McCartney's own chapter 13 case on December 12, 2008. The Graham receivable is based upon an oral contract for rent in the amount of $5,000. This debt was not repaid and was scheduled in the Grahams' own chapter 13 case. Any dividend to general unsecured creditors under the Grahams' confirmed plan will be insignificant.

A 1998 Dodge Caravan scheduled with a value of $500 now has a bad transmission and

---

[5] *See* Dkt. 55, amending Dkt. 48.

[6] Dkt. 57.

electrical system and can be salvaged for no more than $100. The Suzuki motorcycle also has an electrical problem and is more appropriately valued at $1,200, rather than the $2,000 shown on Schedule B.[7] The revised value of these non-exempt and unencumbered items of personal property in Schedule B as of January 13, 2010 - the date debtors filed their motion to modify their confirmed plan - and taking into account these adjustments, is $1,507.04.

Finally, the Court notes that the plan as originally confirmed delayed vesting of the estate's property in the debtors until discharge or dismissal of the case.[8] This is the norm in plans filed and confirmed in this District.

Analysis and Conclusions of Law

To confirm a chapter 13 plan, the debtor must show that, among other things, the plan is in the best interests of the creditors by demonstrating that the creditors will receive no less than they would have received in a chapter 7 case "as of the effective date of the plan."[9] Debtors, the Trustee, or a creditor may move to modify a confirmed chapter 13 plan at any time.[10] The ability to modify is limited to four specific areas: changing the amount of payments to a particular class of debt, changing the length of time for such payments, altering the amount of a creditor's distribution to account for other payments to that creditor outside the plan, or to reduce payments to account for

---

[7] The Court observes that the parties omitted from their stipulations a 1999 Suzuki motorcycle valued at $2,000 on Schedule B. However, Schedule D reflect that the motorcycle is encumbered by a lien in favor of Mid-Kansas Credit Union and is therefore, excluded from the liquidation value.

[8] Debtor's second amended plan was filed March 11, 2009 and confirmed on April 9, 2009. *See* Dkt. 27 and 34. *See also,* § 1327(b).

[9] Section 1325(a)(4).

[10] Section 1329(a).

-4-

certain health insurance premiums.[11] Section 1329(b)(1) provides that § 1325(a) applies to any plan modification, necessarily implicating § 1325(a)(4)'s liquidation or "best interests" test. The only temporal limitation on plan modification is that a plan may not run longer than five years from the due date of the first payment under the first plan in any event.[12]

These debtors seek to increase their payments to cure a post-petition arrearage on their homestead. They also seek to reduce the dividend that the unsecured creditors were to have received under the confirmed plan because, they argue, the value of their unsecured, non-exempt assets turns out to be significantly lower than they initially thought. The modification the debtors seek falls within § 1329(a)(1)(A), changing the payment to a particular class of creditor.

The courts have split on the issue of when to pinpoint the "effective date" of a plan modification for the purpose of confirming it under § 1329(b)(1). The majority position, as recognized by Judge Lundin in his Chapter 13 treatise, is that the effective date of a plan modification is the date of the modification rather than the effective date of the initial confirmed plan although Judge Lundin by no means suggests this position is without problems.[13] The leading case is *In re Barbosa*.[14] In *Barbosa*, the court dealt with debtors who owned an investment property that was valued at $64,000 at confirmation. Two years after confirmation, the debtors sold the property for $137,500 releasing to themselves a substantial equity. The Trustee moved to modify

---

[11] Section 1329(a)(1)-(4).

[12] Section 1329(c).

[13] Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 254.1, Sec. Rev. June 15, 2004, www.Ch13online.com. (hereafter CHAPTER 13 BANKRUPTCY).

[14] 236 B.R. 540 (Bankr. D. Mass. 1999), *aff'd on other grounds,* 243 B.R. 562 (D. Mass.), *aff'd* 235 F.3d 31 (1st Cir. 2000).

-5-

their plan to increase the unsecured creditors dividend to 100 per cent. Holding that the effective date of a modified plan is the modification date, the court considered that § 541(a)(6) would have made the profits from this property part of a chapter 7 case in the event the debtors had converted it in good faith and that the same result should obtain in determining the hypothetical liquidation value of the debtors' estate.

Opposite *Barbosa* is a minority line of cases led by *In re Forbes* in which the Eighth Circuit Bankruptcy Appellate Panel held that because modified plans "become the plan" under § 1329(b)(2) once approved, the "plan" is a unitary constant that exists throughout the case and brings with it a constant effective date–that relating to the initially-confirmed plan.[15] In this Court's view, setting aside the troublesome practicalities that attend both interpretations, *Barbosa* better interprets the interaction between § 1329(b) and § 1325(a)(4) by giving effect to § 1325(a)(4) yet recognizing that a modified plan becomes the plan. This is particularly so where, as in this District, the normal practice is that property of the estate does not revest in the debtor until discharge.[16] It also dovetails with § 348(f) as noted below.

There is no doubt that this interpretation could lead to troublesome outcomes. For instance, each time a debtor accumulates some asset, so long as revesting in debtor is deferred to discharge, a creditor or the Trustee could seek an upward modification of payments. Likewise, a debtor suffering from depreciation of an asset could constantly seek downward modifications of his payment responsibilities. As Lundin points out, there are numerous variations of fact patterns that

---

[15] 215 B.R. 183 (8th Cir. BAP 1997).

[16] *See* CHAPTER 13 BANKRUPTCY, *supra* at § 254.1, ¶s 4-5, 37.

Case 08-13170   Doc# 69   Filed 09/08/10   Page 6 of 8

make this reading of the Code tenuous.[17]  Nevertheless, the Court is bound by Congressional enactment.

Here, the debtors will not benefit in any way from the receivables that have been discharged in bankruptcy or are uncollectible.  Nor do they materially benefit from the retention of the other vastly depreciated personal property in the condition it is represented.  They propose to liquidate that property and dedicate the proceeds to the unsecured creditors while curing their home arrearage.  What they propose to return to the unsecured creditors is an accurate reflection of what the creditors might hope to receive in a chapter 7 liquidation were debtors to file their case or convert this case to chapter 7 today.  Section 348(f)(1) provides that property of the estate in a converted chapter 13 case shall consist of the property of the estate as of the date of the petition and that remains in the debtor's possession or control at conversion.  Notably, subsection (f)(2) provides that valuations of property in chapter 13 do not survive conversion to chapter 7.   The Court can find no support or basis in the Code to require that debtors who seek to modify their plans post-confirmation be tied to the pre-petition valuation of their unencumbered property.  Nor would there be a principled basis for allowing upward re-valuations on modification when the debtors' property has appreciated – thus benefitting creditors – but disallowing downward modifications when depreciation occurs.

The Trustee is not without a remedy.  In an appropriate case, the Trustee may conclude that the debtors have not proposed their modification in good faith.  As § 1325(a) expressly applies to post-confirmation modifications, § 1325(a)(3) gives the Trustee and the Court considerable discretion to consider whether the debtors' efforts to reduce their payments are based on market or other involuntary depreciation or spring from some less equitable instinct.

---

[17] CHAPTER 13 BANKRUPTCY, *supra* at § 254.1.

-7-

Case 08-13170    Doc# 69    Filed 09/08/10    Page 7 of 8

Accordingly, the Court concludes that the effective date of a modified plan for purposes of a post-confirmation modification under § 1329 and satisfaction of the best interests of creditors test in § 1325(a)(4), is the date of the modification. The debtors' motion to modify is GRANTED and the Trustee's objection is OVERRULED.

# # #